## RALSTON ET AL. *v.* BEALL ET AL.[1]

[No. 15,387.    Filed April 23, 1892.    Rehearing denied November 17, 1892.] .

1. HIGHWAYS.—*Free Gravel Roads.—Petitions.—Jurisdiction.*—Under §5092 R. S. 1881, the board of commissioners, upon the filing of a petition for the construction of a free gravel road, signed by five or more interested landowners, together with a proper bond, had jurisdiction to appoint viewers therefor and to appoint an engineer to lay out the road, but had no jurisdiction to make an order for the establishment thereof until a majority of the assessable landowners whose lands constituted a majority of the acreage to be assessed, had signed such petition. p. 721.

2. SAME.—*Free Gravel Roads.—Additions and Withdrawals. of Signatures.*—Signatures may be added to, or withdrawn from, a free gravel road petition at any time before the report of the viewers is passed upon and the finding made, the withdrawal of a petitioner merely dismissing the proceedings as to himself. p. 722.

3. TRIAL.—*Dismissal.—Time for.*—In a civil case the plaintiff may dismiss at any time before the jury retires, or the court announces a finding. p. 722.

4. HIGHWAYS.—*Viewers' Report.—Final Order.—Effect.—Indefinite Continuance.*—The board of commissioners, upon the filing of a favorable report by the viewers for a free gravel road, has no right to order an indefinite postponement thereof, but should order its construction; and such order would import not only that the board had jurisdiction, but that the road would be of public utility. p. 722.

5. SAME.—*Final Order.—Indefinite Postponement.—Acquiescence.—Setting Aside Order.*—Where petitioners for a free gravel road secured a favorable viewers' report and an order that such road should be constructed, but delaying such construction until such time as the board should deem expedient, and petitioners acquiesced therein and took no action thereon for six years, the board had the right to ignore such order and allow the withdrawal of petitioners, thereby rendering the petition insufficient, since during such delay changed conditions might affect the public utility of such proposed road. p. 723.

---

1. This case was by inadvertence omitted from the official reports, and is inserted here.—Reporter.

From Miami Circuit Court; *Daniel P. Baldwin,* Judge *pro tem.*

Highway proceeding by John Ralston and others, against which Abram I. Beall and others remonstrate. From a judgment for remonstrants, petitioners appeal. *Affirmed.*

*Roscoe Kimple,* for appellants.

*Stephen D. Carpenter,* for appellees.

McBRIDE, J.—At the March session, 1882, of the Board of Commissioners of the County of Miami a petition was presented to the board, asking for the construction of a free gravel road, under the provisions of the act of March 3, 1877 (Acts 1877, p. 82, §5091 *et seq.* R. S. 1881).

The petition was signed by the requisite number of qualified persons, and on June 21, 1882, all the necessary and proper preliminary steps having been taken, the matter was submitted to the board for final action, under §5095, R. S. 1881. The board thereupon made the following finding and order: "And it appearing to the board by due proof that a majority of the resident landholders of Miami county, whose lands are reported as benefited, and ought to be assessed therefor, have subscribed the petition above specified, asking for such improvement herein reported, and the board, after due consideration thereof, and being fully advised in the premises, finds that public utility requires the establishment and construction of such gravel road. Therefore, in consideration of the fact that the bonding capacity of the township under the law regulating the issuing of bonds for such purpose has been exhausted, it is ordered that said report be continued for further action at such time as the board may deem expedient."

No further action appears to have been taken in the matter until the March session, 1888, of the board, when a remonstrance was filed against the construction of the road, and certain of the petitioners asked leave to withdraw their names from the petition. There was then a further continu-

ance to the June session, 1888, when certain of the petitioners asked the board to make a final order for the construction of the road. Without recounting the intermediate steps, it is sufficient to say that at a special session of the board, held in August, 1888, the board permitted a large number of names to be withdrawn from the petition, over the objection of the remaining petitioners. Thereupon, it appearing that without the names withdrawn the petition was not signed by the required number of qualified persons, the petition was dismissed. On appeal to the circuit court this action of the board was sustained.

·The only question presented by the record and argued by counsel grows out of the action of the court in permitting the withdrawal of the names of petitioners from the petition and the consequent dismissal of the cause.

Counsel for the appellants insists: (1) That after the finding by the board, of June 21, 1882, it was too late for any petitioner to withdraw; (2) that if they were entitled to withdraw after that time, such withdrawal could not result in defeating the jurisdiction of the cause.

Under the statute in question the board of county commissioners could assume jurisdiction of a proceeding of this character upon the filing of a petition signed by five or more of the landholders, whose lands would be assessed for the cost of the improvement, with proper bond, and could appoint viewers and an engineer to view and lay out the road, etc. §5092 R. S. 1881. They, however, had no jurisdiction to make an order for the improvement until after the petition had been signed by a majority of the resident landholders of the county whose lands the viewers reported were benefited and ought to be assessed; and also the owners of a majority of the whole number of acres of all lands which they reported were benefited and ought to be assessed. §5095, *supra*.

Whether the petition is signed by the requisite number of qualified persons remains an open question until the board

considers and passes upon the report of the viewers.

2.   At any time before the board makes its finding, names may be added to or withdrawn from it.   The withdrawing of the name of a petitioner simply dismisses the proceeding as to himself.   After the finding has been made the right to withdraw names no longer exists.   *Black* v. *Campbell* (1887), 112 Ind. 122; *Hord* v. *Elliott* (1870), 33 Ind. 220; *Little* v. *Thompson* (1865), 24 Ind. 146.

This is simply applying to proceedings of this character the rules of practice in analogous civil cases.   In such cases a party may dismiss his case at any time before the

3.   jury retires or the court announces its finding.   §333 R. S. 1881.   After that time the right to dismiss no longer exists.

The finding which the board is required to make under §5095, *supra,* is, like the verdict of a jury, or a finding by a court, a finding on the merits of the proceeding, and

4.   should be followed by an order that the improvement be made.   It is a finding not only of the jurisdictional facts, but upon the public utility of the proposed improvement, and that, in the opinion of the board, public utility requires it.   It follows, therefore, that when the board had made its finding in the case at bar, the right of petitioners to withdraw their names from the petition was at an end.

The order which the board made was, however, not such an order as should have followed the finding, and was evidently based upon a misconception of the law. *Strieb* v. *Cox* (1887), 111 Ind. 299.   The petitioners were entitled to an order that the improvement be made. Instead of insisting upon the making of such an order, it would seem from the record that they acquiesced in the erroneous order made by the board, without objection or protest, and allowed the entire proceeding to remain in abeyance for six years before asking that further action be taken.   Even then they were only spurred into action by the filing of a remonstrance, and of a request by certain of

their copetitioners for leave to withdraw their names from the petition. The order for making the improvement should have immediately followed the finding.

It is not necessary in this case to decide whether the board may, after making its finding, defer making the order to some later time. We therefore refrain from expressing any opinion as to the effect of the order made in this case.

Assuming that the board possessed the power to defer final action, and that it might, for a reasonable time, delay ordering the improvement without prejudice to the rights of the petitioners, can the proceeding be thus delayed indefinitely? If, after the finding, the making of the final order can be postponed six years, without affecting the right of the board to order the improvement made, why may it not be thus allowed to remain in abeyance for any period? It might, indeed, thus rest until all necessity for the improvement had ceased to exist, by the making of other improvements, yet the finding, if still in full force, would prevent the withdrawal of names, or the dismissal of the proceeding; and the board could be compelled, at the demand of a minority of the petitioners, and over the protest and active opposition of the majority, to make the final order and cause the improvement to be made.

The circumstances attending this case are so exceptional that we find ourselves practically without precedent to aid us in deciding it. For the same reason it can hardly 5. be looked to as a precedent, governing cases in the future. The action of the petitioners in acquiescing in the postponement of the case by the board, and thereafter for six years apparently ignoring the entire proceeding, was sufficient to justify the board in ignoring the finding made, and in again taking the matter up *de novo,* on the petition and report of the viewers. While the viewers had reported, and the board had found, that public utility required the improvement, the lapse of time may have wrought such changes in the circumstances and surroundings that there

was no longer any such requirement. Indeed that which resuscitated the proceeding and again brought it to the attention of the board was an assertion by some of its former advocates that the necessity for making it no longer existed. While the board might not take judicial notice of such changes as had been made, it might and should consider the possibilities of changed conditions arising during the intervening six years.

Therefore, when the proceeding was brought to the attention of the board at its March session, 1888, by the remonstrance and the motion by petitioners for leave to withdraw their names from the petition, it was justified in treating it as if no finding had been made. It follows that at that time the names of petitioners might still be added or withdrawn, and the board, as well as the circuit court, did not err in so holding. It is admitted of record by the parties that after the names were withdrawn from the petition the remaining petitioners were less than the required number. This being true, it was not error to dismiss the proceeding.

We find no error in the record. Judgment affirmed, with cost.